1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  LINDORA, LLC, a Delaware limited          Case No. 15-cv-2847-JAH (KSC)
    liability company,
12                                            **ORDER GRANTING DEFENDANT'S**
                            Plaintiff,        **MOTION TO DISMISS (DOC. # 7)**
13                                            **AND TRANSFERRING TO THE**
    v.                                        **EASTERN DISTRICT OF**
14                                            **PENNSYLVANIA**
    LIMITLESS LONGEVITY LLC, a
15  Pennsylvania limited liability company,

16                          Defendant.

17

18

19                          **INTRODUCTION**

20        This action arises from Defendant Limitless Longevity LLC's ("Defendant")

21  alleged use of Plaintiff Lindora, LLC's ("Plaintiff") "Lean for Life" trademarks. Before

22  the Court is Defendant's motion to dismiss for lack of personal jurisdiction or, in the

23  alternative, to transfer to the Eastern District of Pennsylvania. (See Doc. # 7). Plaintiff

24  opposes. (See Doc. # 10). After careful consideration of the pleadings, and for the reasons

25  set forth below, Defendant's motion to dismiss is **GRANTED**, and this matter is

26  **TRANSFERRED** to the United States District Court for the Eastern District of

27  Pennsylvania.

28  / / /

                                    1

## BACKGROUND

### A. Factual History

Plaintiff is a Delaware limited liability company with its principal place of business in California. (Doc. # 6, ¶ 1). Plaintiff markets and sells weight management goods and services, including meal replacement shakes, protein bars, and diet planning services. Id. ¶¶ 10, 15, 16. Plaintiff has used the marks "Lean for Life!" and "Lean for Life" (collectively, the "Lindora Marks") to promote and sell its products since at least 1989. Id. ¶ 10. Plaintiff registered the "Lean for Life!" mark with the U.S. Patent and Trademark Office ("USPTO") on December 20, 1994, and registered the "Lean for Life" mark with the USPTO on April 17, 2007. Id. ¶¶ 15, 16. Plaintiff asserts that the Lindora Marks are an essential component of its goodwill and reputation, conveying to consumers that the products bearing those marks come from an industry leader known for high-quality products and services. Id. ¶ 12.

Defendant is a Pennsylvania limited liability company with its principal place of business in Pennsylvania. Id. ¶ 2. Defendant is a medical practice specializing in weight loss and fitness services. (Doc. # 7-1, pg. 5).[1] Defendant is wholly owned by Dr. Charles Seltzer, a physician who is "board-certified in Obesity Medicine and certified . . . as a Clinical Exercise Specialist." (Doc. # 8, ¶ 1; Doc. # 11-1, Exh. A, pg. 2). Defendant alleges that its services require in-person interaction with its patients, therefore Defendant's clientele primarily reside in Pennsylvania, New Jersey, and New York. (Doc. # 7-1, pg. 5). However, Defendant had one California patient who Dr. Seltzer treated via Skype. (Id.; Doc. # 15-1, ¶ 2). Defendant contends that it has no real property, bank accounts, or employees in California. (Doc. # 7-1, pg. 5). Furthermore, Defendant asserts that it does not advertise in California. Id. Defendant operates the website www.drseltzerweightloss.com, from which it promotes and facilitates its weight loss

---

[1] Page numbers cited refer to the page numbers assigned by the Court's electronic filing system rather than to page numbers provided in the pleadings.

15-cv-2847-JAH (KSC)

services by offering resources and patient forms. (Doc. # 6, ¶¶ 3, 7). Defendant also utilizes social media to promote its services, and Dr. Seltzer has written and been featured in various health-related articles available on the Internet. Id. ¶ 7.

Plaintiff alleges that Defendant has used the Lindora Marks and confusingly similar marks without permission on Defendant's website and in its marketing materials to promote its business. Id. ¶ 17. Specifically, Plaintiff alleges that Defendant uses the infringing marks "LEAN4LIFE" and "LEAN FOR LIFE" on its website and in its marketing material. Id. Plaintiff further alleges that Defendant "uses the hashtag #Lean4Life on social media, and refers to its clinic and/or fitness center as Lean4Life." Id. Finally, Plaintiff alleges that Defendant willfully infringed the Lindora Marks by continuing to use the marks after Plaintiff sent a cease-and-desist letter to Defendant on October 29, 2015.  Id. ¶ 22.

## B. **Procedural History**

On December 17, 2015, Plaintiff initiated the instant lawsuit. (See Doc. # 1). On February 5, 2016, Plaintiff filed the operative first amended complaint ("FAC") asserting the following claims against Defendant: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114, (2) false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), (3) trademark infringement under California common law, and (4) unfair competition under California common law and California Business & Professions Code § 17200 et seq. (Doc. # 6, pg.  7–11). On February 19, 2016, Defendant filed the instant motion to dismiss Plaintiff's FAC for lack of personal jurisdiction or, in the alternative, to transfer the action to the Eastern District of Pennsylvania. (See Doc. # 7). On March 21, 2016, Plaintiff filed an opposition to Defendant's motion and a request for judicial notice in support of its opposition brief. (See Doc. # 10). Defendant filed a reply brief on March 28, 2016. (See Doc. # 15). On March 29, 2016, the Court took Defendant's motion to dismiss under submission without oral argument pursuant to Civil Local Rule 7.1.d.1. (See Doc. # 17).

/ / /

**LEGAL STANDARD**

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, a court decides such a motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). In establishing personal jurisdiction, a plaintiff's uncontroverted allegations are taken as true. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004); AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). However, this same assumption does not apply to allegations that are contradicted by affidavit. Data Disc, Inc. v. Sys. Tech. Ass'n, Inc., 557 F.2d 1280, 1284 (9th Cir. 1977). If the parties submit conflicting affidavits, the plaintiff's version trumps. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011); Pebble Beach Co., 453 F.3d at 1154; AT & T, 94 F.3d at 588–89 (citing WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989)).

A court may exercise personal jurisdiction over a defendant if (1) permitted by the forum state's long-arm statute, and (2) the "exercise of that jurisdiction does not violate federal due process." Pebble Beach, 453 F.3d at 1154–55 (citing Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996)). California's long-arm statute is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same. CAL. CIV. PROC. CODE § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). The Fourteenth Amendment's Due Process Clause requires that a defendant have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal

jurisdiction is characterized as either general or specific. See <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800–02 (9th Cir. 2004).

## JUDICIAL NOTICE

Under Rule 201(b) of the Federal Rules of Evidence, a court may take judicial notice of a fact not subject to reasonable dispute because (1) it is generally known within the trial court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201(b). When ruling on a motion to dismiss, proper subjects of judicial notice include legislative history reports, court documents already in the public record or filed with other courts, and publicly accessible websites. See <u>Anderson v. Holder</u>, 673 F.3d 1089, 1094, n.1 (9th Cir. 2012) (legislative history reports); <u>Holder v. Holder</u>, 305 F.3d 854, 866 (9th Cir. 2002) (court documents in the public record or filed in other courts); <u>Wible v. Aetna Life Ins. Co.</u>, 375 F. Supp. 2d 956, 965–66 (C.D. Cal. 2005) (public websites); <u>Caldwell v. Caldwell</u>, No. C 05–4166 PJH, 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006) (public websites). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. <u>Daniels-Hall v. Nat'l Educ. Ass'n</u>, 629 F.3d 992, 998 (9th Cir. 2010).

Plaintiff filed a request for judicial notice in support of its opposition to Defendant's motion to dismiss. (See Doc. # 10-1–Doc. # 14).[2] Plaintiff requests the Court judicially notice Exhibits A through M, which are hard copies of various publicly available webpages. (Doc. # 10-1). These websites include: (1) various pages from Defendant's website, (2) Internet articles written by Dr. Seltzer, (3) Internet articles on health featuring Dr. Seltzer, (4) Defendant's social media accounts, (5) Yelp reviews on Defendant's services, (6) various pages from Plaintiff's website, (7) Amazon reviews of

---

[2] The exhibits of which the Plaintiff requests the Court take judicial notice were filed on the same day as Plaintiff's motion to dismiss albeit under different docket filing numbers due to the extensive size of the filings. (See Doc. # 12).

Plaintiff's books, and (8) Plaintiff's licensees' websites. (See Docs. # 11–14, Exhs. A–M). Plaintiff argues that judicial notice of these webpages is proper because they are publicly available on the Internet and are "capable of accurate and ready determination by . . . sources whose accuracy cannot reasonably be questioned." (Doc. # 10-1, pg. 4).

Defendant does not object to the authentication of any of the websites of which Plaintiff seeks judicial notice. (See Doc. # 16). Defendant objects only to the various characterizations and comments about the websites made by Plaintiff's counsel in the affidavit accompanying the exhibits. Id. (citing Doc. # 11). Defendant need not be concerned because Plaintiff requests judicial notice of "the materials found in Exhibits A through M," and not of the statements set forth in Plaintiff's counsel's affidavit. Because the exhibits Plaintiff seeks to have judicially noticed are publicly accessible webpages and Defendant does not oppose authentication of the websites, Plaintiff's request for judicial notice is **GRANTED** pursuant to Federal Rule of Evidence 201(b).

## DISCUSSION

Defendant moves to dismiss the instant action on the basis that it is not subject to general or specific jurisdiction in California. (See Doc. # 7-1, pg. 2–7). Alternatively, Defendant contends this matter should be transferred to the Eastern District of Pennsylvania, the district in which Defendant's principal place of business is located. Plaintiff opposes a transfer and argues that this Court has personal jurisdiction over Defendant. Plaintiff asserts that the Court has specific personal jurisdiction over Defendant because Defendant purposefully availed itself of doing business in California by treating a California patient, maintaining an interactive website, and nationally promoting its services. (Doc. # 10, pg. 8–15). Plaintiff does not assert that Defendant is subject to general jurisdiction, and indeed Defendant is not. See CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1074 (9th Cir. 2011) (internal citations and quotations omitted) (stating that general jurisdiction over an out-of-state business is proper when the company's affiliations with the forum state "are so continuous and systematic as to render them essentially at home" in the forum state and stating that this "standard is met

only by continuous operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities"). Therefore, the Court will address only specific jurisdiction.

## A. **Specific Jurisdiction**

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. <u>Rano v. Sipa Press, Inc.</u>, 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

<u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 802 (9th Cir. 2004) (citing <u>Lake v. Lake</u>, 817 F.2d 1416, 1421 (9th Cir. 1987)). In "consider[ing] the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts," a "strong showing on one axis will permit a lesser showing on the other." <u>Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemtisme</u>, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc). If the plaintiff establishes the first two prongs, then it is the defendant's burden to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." <u>Schwarzenegger</u>, 374 F.3d at 802 (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476–78 (1985)). However, if the plaintiff fails to satisfy its burden in establishing either of the first two prongs, "jurisdiction in the forum would deprive the defendant of due process of law." <u>Omeluk v. Langsten Slip & Batbyggeri A/S</u>, 52 F.3d 267, 270 (9th Cir. 1995).

### 1. **Purposeful Direction**

The first prong of the specific jurisdiction test refers to both purposeful availment and purposeful direction. In infringement actions, the Ninth Circuit employs a purposeful direction analysis. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1228 (9th Cir. 2011) (citing Schwarzenegger, 374 F.3d at 802); see also Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010) (stating that "[p]urposeful direction is . . . the proper analytical framework" in an infringement case).[3] Courts assess purposeful direction using a three-part test derived from the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984). CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1077 (9th Cir. 2011). The "Calder effects test" requires that the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) caused harm that the defendant knew is likely to be suffered in the forum state. See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemtisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc).

Defendant contends that it has not purposefully directed its activities at California because the services it offers require in-person interaction with its patients, so Defendant directs its advertising efforts at people who live in or near Defendant's principal place of business in Pennsylvania. (Doc. # 7-1, pg. 9). Defendant further argues that it did not purposefully direct its activities at California because it did not seek out the business of its one California patient; rather, Defendant's California patient sought out Defendant's services after being referred to Defendant by an acquaintance. (Id.; Doc. # 8, ¶ 4). Therefore, Defendant asserts that it did not purposefully direct its practice at California. (Doc. # 7-1, pg. 9).

---

[3] Alternatively, courts employ a purposeful availment analysis when the plaintiff asserts "claims sounding in contract." Picot v. Westin, 780 F.3d 1206, 1212 (9th Cir. 2015). Plaintiff asserts no contract-based claims, so the Court will proceed with a purposeful direction analysis.

1        In opposition, Plaintiff argues that Defendant purposefully directed its activities at

2    California by providing medical treatment to a California resident, maintaining an

3    interactive website, and promoting its services nationally. (Doc. # 10 pg. 13–17). First,

4    Plaintiff contends that Defendant is subject to personal jurisdiction because Defendant

5    treated at least one California patient.[4] Id. at 13–14. Plaintiff cites to cases in which other

6    district courts have held that out-of-state physicians and medical providers are subject to

7    personal jurisdiction in the state where their patient was treated or resides. Id. (citing

8    Gonzales v. Chandel, 13 F. Supp. 2d 1197, 1199 (D. Kan. 1998); Dunn v. United Reg'l

9    Health Care Sys., Inc., No. Civ–08–620–D, 2009 WL 4727338, *5-6 (W.D. Okla. 2009);

10   Kostal v. Pinkus Dermatopathology Lab., P.C., 357 Ill. App. 3d 381, 396–98 (1st Dist.

11   2005)). Further, Plaintiff notes that Defendant features a California patient as one of

12   Defendant's success stories noted on its website, which displays the allegedly infringing

13   marks and advertises that it treats patients nationwide. (See Doc. # 10, pg. 14–15; Doc. #

14   11, Exh. G (featuring two patient success stories noting that the patients were treated via

15   Skype); Doc. # 11, Exh. B (stating that Defendant's physicians "see patients via Skype all

16   over the country")).

17       Second, Plaintiff argues that Defendant is subject to personal jurisdiction in

18   California because it purposefully directs its services at California through its interactive

19

20   _____

21   [4] Defendant admits to having treated one California patient via Skype messaging in the

22   past. (Doc. # 15-1, ¶ 2). Plaintiff asserts that Defendant's website and the Yelp directory

23   feature another potential California patient. (Doc. # 10, pg. 14). Upon review of

24   Defendant's website and Yelp directory, the Court finds that it is likely that the California

25   patient who Defendant admits to treating is the same patient who is featured as a success

26   story on his website and who wrote a favorable Yelp review on Defendant's services.

27   (See Doc. # 14, Exh. G (featuring Sara as a success story, noting that Sara lives across the

28   country, and displaying before and after photographs of Sara in a black bathing suit);

Doc. # 14, Exh. F (Yelp review of Defendant's services written by Sara of California who

states that she received services from Defendant despite being "across the country" and

displays a thumbnail photograph of Sara in the same black bathing suit worn in Sara's

success story on Defendant's website)).

website, http://drseltzerweightloss.com, and through national promotional activities. (Doc. # 10, pg. 15–16). Plaintiff asserts that Defendant's website: (i) provides information about Defendant's services and links where site visitors can learn more about Defendant's weight loss approach, (ii) states that Dr. Seltzer has a "nationwide client roster," (iii) features at least two patients whose treatments included Skype sessions, one of whom is a California resident, (iv) explains that it complies with California's Online Privacy Protection Act , and (v) provides forms and contracts that patients must sign to receive Defendant's services. Id.

In reply, Defendant asserts that Plaintiff still failed to allege that Defendant purposefully directed its activities at California. (Doc. # 15 pg. 4–8). Defendant argues that Plaintiff did not mention, let alone satisfy Calder's effects test, which the Ninth Circuit uses to determine purposeful direction. Id. at 4–5. Defendant asserts that Plaintiff's description of its websites denotes a passive website, which is insufficient to confer personal jurisdiction. Id. at 5–6. Next, Defendant states that, assuming arguendo its website is interactive, Plaintiff would still have to allege that Defendant did "something more" to purposefully direct its activity at California, but failed to do so. Id. at 6. Further, Defendant contends that its website does not state that it treated a California resident, the person-in-question became a patient before Defendant used the alleged infringing mark, and Defendant no longer treats this patient. Id. at 7; Doc. # 15-1, ¶ 2. Therefore, Defendant argues that by treating and featuring this person on its website, Defendant did not purposefully direct its activities at California. (Doc. # 15 pg. 7–8). Additionally, Defendant asserts that any statements on its website that it has "an active nationwide client roster" are puffery and do not demonstrate purposeful direction at California. Id. at 8.

As noted above, the purposeful direction analysis requires courts to employ a three-part test examining whether the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, and (3) caused harm that the defendant knew is likely to be suffered in the forum state. See Yahoo! Inc. v. La Ligue Contre Le Racisme Et

L'Antisemtisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). The Court addresses these elements in turn.

### (a) <u>Intentional Act</u>

First, the Court concludes that Plaintiff sufficiently alleged that Defendant committed an intentional act. For the purposes of the <u>Calder</u> effects test, "an intentional act is an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." <u>Washington Shoe Co. v. A–Z Sporting Goods Inc.</u>, 704 F.3d 668, 674 (9th Cir. 2012).

Plaintiff alleged that Defendant operates a website in which it uses the infringing marks. (Doc. # 6, ¶ 17). Additionally, Plaintiff alleged that Defendant uses the infringing marks in its marketing materials, in its social media postings, and as the name of Defendant's clinic. <u>Id.</u> Finally, Plaintiff alleged that Defendant continued to use the alleged infringing marks after receiving a cease-and-desist letter from Plaintiff. <u>Id.</u> ¶ 22. Plaintiff's allegations are sufficient to establish that Defendant committed an intentional act. <u>See</u> <u>Facebook, Inc. v. Pedersen</u>, 868 F. Supp. 2d 953, 958–59 (N.D. Cal. 2012) (finding intentional act prong satisfied where the defendants operated a website containing alleged infringing marks); <u>Lindora, LLC v. Isagenix Int'l LLC</u>, —F. Supp. 3d—, Case. No. 15–cv–2754–BAS–RBB, 2016 WL 4077712, at *6 (S.D. Cal. Aug. 1, 2016) (finding that allegations that the defendant operated a website using infringing marks sufficiently established an intentional act under <u>Calder</u>); <u>California Brewing Co. v. 3 Daughters Brewing LLC</u>, No. 2:15–cv–02278–KJM–CMK, 2016 WL 1573399, at *3 (E.D. Cal. Apr. 18, 2016) (finding that marketing and selling products that allegedly infringed plaintiff's trademark constituted intentional acts under <u>Calder</u>); <u>Int'l Oddities v. Record</u>, No. CV 12–3934–CAS (VBKx), 2013 WL 3864050, at *5 (C.D. Cal. July 22, 2013) (finding that allegations that the defendant used an infringing mark to sell products on its website sufficiently established an intentional act under <u>Calder</u>). Accordingly, the first prong of the <u>Calder</u> effects test is satisfied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### (b)  Express Aiming

Next, the Court concludes that Plaintiff failed to sufficiently allege that Defendant expressly aimed its allegedly tortious actions at California. The "express aiming" prong of the <u>Calder</u> effects test asks whether the defendant's allegedly tortious action was "expressly aimed at the forum." <u>Brayton Purcell LLP v. Recordon & Recordon</u>, 606 F.3d 1124, 1129 (9th Cir. 2010). Originally, the United States Court of Appeals for the Ninth Circuit "struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." <u>Mavrix Photo, Inc. v. Brand Techs., Inc.</u>, 647 F.3d 1218, 1229 (9th Cir. 2011). While this is still an expanding area of the law, the Ninth Circuit has since established some parameters.

On one hand, "maintenance of a passive website alone cannot satisfy the express aiming prong" of the <u>Calder</u> effects test. <u>Id.</u> (internal citations omitted); <u>see also</u> <u>Pebble Beach Co. v. Caddy</u>, 453 F.3d 1151, 1156 (9th Cir. 2006); <u>Cybersell Inc. v. Cybersell, Inc.</u>, 130 F.3d 414, 418–20 (9th Cir. 1997). On the other hand, "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient." <u>Mavrix Photo</u>, 647 F.3d at 1229 (internal citations omitted). In assessing whether a defendant has done "something more," courts consider several factors, including "the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." <u>Id.</u> (internal citations omitted). For example, courts have found the "something more" requirement satisfied where, in addition to maintaining websites featuring an allegedly infringing mark, defendants actively advertised in the forum state or sent a letter to the plaintiff in the forum demanding money to release defendant's registration of the domain name that included the plaintiff's trademark. <u>Rio Props., Inc. v. Rio Int'l Interlink</u>, 284 F.3d 1007, 1020–21 (9th Cir. 2002) (actively advertised in forum state); <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1322 (9th Cir. 1998) (sent letter to plaintiff).

Plaintiff argues that Defendant purposefully directed its activities at California by (1) providing medical treatment to a California patient via Skype, and (2) promoting its services through its "highly interactive" website and on other social media. Plaintiff does not apply the express aiming test.  Regardless, as explained below, the Court finds that Plaintiff failed to sufficiently allege that Defendant's intentional acts were expressly aimed at California.

First, Plaintiff's allegations that Defendant treated a California patient via Skype are insufficient to satisfy the express aiming prong of the Calder effects test in this matter. As noted above, the express aiming test examines whether the defendant's alleged intentional, tortious act was expressly aimed at the forum. See Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1129 (9th Cir. 2010); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 806 (9th Cir. 2004). Here, the alleged intentional, tortious act was not Defendant's treatment of the California patient; it was Defendant's use of the Lindora Marks or similarly confusing marks. Further, Defendant did not seek out this California patient, and Dr. Seltzer began treating this patient before Defendant used the allegedly infringing marks. Because Defendant's treatment of this patient is unrelated to the alleged tortious act, it is not part of this Court's express aiming inquiry and does not confer on this Court specific personal jurisdiction over the Defendant in this trademark infringement action.

Plaintiff contends that "even if a physician has never set foot in the forum state or solicited business in the forum state, and only provided service as a result of the plaintiff's own unilateral actions, the physician in subject to personal jurisdiction in the forum state of the patient. . . ." (Doc. # 10, pg. 13–14) (citing Gonzales v. Chandel, 13 F. Supp. 2d 1197, 1199 (D. Kan. 1998); Dunn v. United Reg'l Health Care Sys., Inc., No. Civ–08–620–D, 2009 WL 4727338, *5-6 (W.D. Okla. 2009); Kostal v. Pinkus Dermatopathology Lab., P.C., 357 Ill. App. 3d 381, 396–98 (1st Dist. 2005)). However, the cases to which Plaintiff cites are inapplicable because they are medical malpractice actions asserted by patients against out-of-state medical providers. Therefore, the

treatment of the patient who resides in the forum state is the alleged tortious action and would be the subject of the express aiming test. Based on the facts as they are alleged here, Defendant's treatment of the California patient did not give rise to and is not related to Plaintiff's claims in the instant case.  Thus, Plaintiff's allegations about Defendant's treatment of this patient are not relevant to and do not establish express aiming.

Plaintiff's allegations regarding Defendant's website and online advertising are similarly insufficient to establish that Defendant expressly aimed its alleged infringing action at California. In the FAC, Plaintiff alleged that Defendant maintains a publicly accessible website that features the alleged infringing marks, offers patient forms and contracts, and provides an online inquiry box where site visitors can leave a question. Plaintiff alleged that Defendant markets its services on a nationwide basis through its website and in other publicly available Internet articles published by or featuring Dr. Seltzer. (See e.g., Doc. # 14-2, Exh. G, pg. 5 (featuring two patients as success stories on Defendant's website and stating that these patients were treated via Skype); Doc. # 11-2, Exh. B, pg. 3 (stating on Defendant's website that patients can enjoy "convenient appointment access with Skype if [they] happen to . . . live in a different part of the country"); Doc. # 11-2, Exh. B, pg. 5 (stating, at the end of an Internet article written by Dr. Seltzer, "[i]f you don't live in the Philadelphia area it's not a problem. I see patients via Skype all over the country")).

Plaintiff's allegations demonstrate that Plaintiff's website is minimally interactive, which alone is insufficient to satisfy the express aiming prong. DFSB Kollective Co. v. Bourne, 897 F. Supp. 2d 871, 882–83 (N.D. Cal. 2012) (stating that allegations that the defendant operated a commercial and interactive website featuring allegedly infringing material without "something more" were insufficient to make a prima facie showing of personal jurisdiction); see also Matus v. Premium Nutraceuticals, LLC, Case No. EDCV 15–1851 DDP (DTBx), 2016 WL 3078745, at *3 (C.D. Cal. May 31, 2016). Further, Plaintiff's allegations that Defendant maintained a publically accessible website advertising its services and featuring allegedly infringing marks are insufficient to

demonstrate that Defendant expressly aimed its conduct *at California*. See Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1156 (9th Cir. 2006) (finding no express aiming at the forum state where the only allegations that the defendant directed its actions at the forum state were based on the defendant's operation of a website that advertised its hotel and restaurant services, used plaintiff's trademark in the site and as part of the website's domain name, and allowed website visitors to fill out an online inquiry form); see also Sanho Corp. v. Cimo Technologies, Inc., No. C 11–2473 PJH, 2012 WL 3075094, at *4–6 (N.D. Cal. 2012) (finding no express aiming in a copyright infringement case where there were no allegations that the defendant's website was commercially popular or that the defendant attracted customers from the forum state through its website).

Defendant notes on the "Frequently Asked Questions" page of its website that it complies with California law. However the Court finds this single mention of California insufficient to demonstrate that Defendant did "something more" to expressly aim its alleged infringing actions at California. Indeed, Plaintiff does not allege that Defendant advertised in California or reached out to California clientele or Plaintiff. Nor does Plaintiff allege that Defendant has, knows of, and profits from a large following of California residents who access its website. See Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1231 (9th Cir. 2011). Further, the articles written by or featuring Dr. Seltzer and the tweets from Dr. Seltzer's Twitter account are not California publications. "Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed." Id. In sum, Plaintiff failed to sufficiently allege that Defendant expressly aimed the allegedly infringing conduct at California. As such, the Court finds that the second prong of the Calder effects test is not satisfied and Plaintiff has failed to make a prima facie showing of specific personal jurisdiction over Defendant.

## B. **Transfer**

Upon finding "that there is a want of jurisdiction," a federal district court "shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the

action . . . could have been brought at the time it was filed or noticed . . . ." 28 U.S.C. § 1631; <u>Miller v. Hambrick</u>, 905 F.2d 259, 262 (9th Cir. 1990). Generally, "transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" <u>Miller</u>, 905 F.2d at 262 (citing <u>Goldlawr, Inc. v. Heiman</u>, 369 U.S. 463, 467 (1962)); <u>see also</u> <u>Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc.</u>, 793 F.3d 991, 996 (9th Cir. 2015) (stating that "transfer will generally be in the interest of justice, unless it is apparent that the matter to be transferred is frivolous or was filed in bad faith"). Here, Defendant's principal place of business is located in the Eastern District of Pennsylvania, so Defendant is subject to personal jurisdiction in that district. Therefore, the Court finds that transfer to the Eastern District of Pennsylvania is appropriate and in the interest of justice.

## **CONCLUSION AND ORDER**

Based on the foregoing, **IT IS HEREBY ORDERED**:

1.   Defendant's motion to dismiss Plaintiff's FAC for lack of personal jurisdiction (Doc. # 7) is **GRANTED**; and

2.   This action is **TRANSFERRED** to the United States District Court for the Eastern District of Pennsylvania.

DATED:    September 28, 2016

_____
JOHN A. HOUSTON
United States District Judge